[Cite as *State v. Topolosky*, 2015-Ohio-4963.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 15AP-211 (M.C. No. 2014TRC-152539) |
| v. | : | (REGULAR CALENDAR) |
| Jacob J. Topolosky, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 1, 2015

*Richard C. Pfeiffer, Jr.*, City Attorney, *Lara N. Baker,* and *Melanie R. Tobias*, for appellee.

*Koffel Law Firm* and *Bradley P. Koffel*, for appellant.

APPEAL from the Franklin County Municipal Court

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant Jacob J. Topolosky appeals from a judgment of conviction and sentence entered by the Franklin County Municipal Court for a violation of R.C. 4511.19(A)(1)(j)(viii)(II), operating a motor vehicle while intoxicated ("OVI") based on the presence of at least 35 nanograms of marijuana metabolite per milliliter in the driver's urine. This is Ohio's marijuana OVI per se statute, in which the tested level of intoxicants of itself establishes a violation. Topolosky entered a plea of no contest to this charge after the trial court denied his motions to suppress evidence and dismiss the charges. He now seeks reversal of his conviction.

## I. Facts and Procedural History

{¶ 2} A state highway patrol trooper observed Topolosky speeding and driving without a safety belt. When pulled over, the trooper smelled marijuana as Topolosky

rolled down his window, and observed a baggie of something resembling marijuana in his glove box. The trooper removed Topolosky from the car, read him his *Miranda* rights, and administered several field sobriety tests. Based on the outcome of these tests, the trooper arrested Topolosky.

{¶ 3} On arrest, Topolosky was taken to the Reynoldsburg police station, where he provided a urine sample. The Ohio State Highway Patrol Crime Laboratory tested this sample and detected both marijuana metabolites and alcohol. A tested marijuana metabolite level in excess of 200 nanograms per milliliter gave rise to the lead charge of OVI per se. Topolosky also faced other charges under separate case numbers which are not part of this appeal.

{¶ 4} Topolosky moved to suppress the urine sample analysis based on errors in the collection and analytical processes. The trial court held an evidentiary hearing, at which it heard testimony from the arresting trooper, the Reynoldsburg police officer who collected the urine sample, the crime laboratory analyst who performed the analysis, and the director of the state highway patrol crime laboratory. The trial court denied the motion to suppress, finding that the state had met its evidentiary burden of showing substantial compliance with testing procedures and regulations.

{¶ 5} Topolosky then moved to dismiss the OVI charge on the basis that Ohio's marijuana OVI per se statute is unconstitutionally vague and violates due process and equal protection guarantees. The court denied the motion. Topolosky then entered a plea of no contest to a single violation of R.C. 4511.19(A)(1)(j)(viii)(II). The state dismissed various other charges pursuant to the plea agreement. The trial court sentenced Topolosky to three days of jail time, a fine of $375 and court costs, and a 180-day driver's license suspension.

{¶ 6} All penalties have been stayed as Topolosky pursues the present appeal.

## II. Assignments of Error

{¶ 7} Topolosky assigns the following errors for our review:

> [1.] The trial court erred by finding that testimony that a lab technician followed a lab manual procedure, without any evidence of the lab manual's contents, proved for the state that the procedure was followed.

[2.] The trial court erred by permitting the completion of a form to establish that sodium fluoride was actually present in a urine sample, despite the invisibility of the capsule in photographs of the sample vial.

[3.] The trial court erred by permitting a lab technician to testify as to test results and as an expert when the state failed to prove that the technician had passed Ohio Department of Health proficiency tests as required by Ohio Administrative Code.

[4.] The trial court erred in finding that the per se marijuana OVI statute (R.C. 4511.19) is not unconstitutional as applied to Mr. Topolosky and generally.

## III. Discussion

### A. Standard of Review for a Motion to Suppress

{¶ 8} On appeal, we review the trial court's disposition of a motion to suppress as a mixed question of law and fact. *State v. Groce*, 10th Dist. No. 06AP-1094, 2007-Ohio-2874, ¶ 6. As the trier of fact, the trial court is in the best position to resolve factual conflicts and evaluate the credibility of witnesses. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). When we examine whether the trial court applied the proper legal standard, however, our review is plenary and without deference to the conclusions reached by the trial court. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 9} When a defendant disputes the validity of a blood and alcohol test through a motion to suppress by asserting that the state laboratory undertook a flawed or unreliable analysis, the defendant carries the initial burden of articulating the legal and factual bases for the motion with sufficient particularity to place the prosecutor on notice of the issues. *State v. Shindler*, 70 Ohio St.3d 54 (1994), syllabus. The burden then shifts to the state to demonstrate substantial compliance with testing regulations. *Burnside* at ¶ 24, 27. The burden then shifts back to the defendant to overcome the presumption of admissibility and demonstrate prejudice from the asserted non-compliance with procedures in regulations. *Id.* at ¶ 24. Absolute and undeviating compliance with Department of Health regulations is not required for the test results to be admissible, unless the deviation demonstrably gives rise to prejudice. *Id.*

## B.  First Assignment of Error — Introduction of Crime Lab Manual

{¶ 10} Topolosky's first assignment of error asserts that the trial court erred when it did not require introduction of a copy of the crime lab procedures manual as proof that lab personnel followed the requisite analytical procedure for Topolosky's urine sample.

{¶ 11} Ohio Adm.Code 3701-53-06, titled "Laboratory requirements," requires laboratories to have "a written procedure manual of all analytical techniques or methods used for testing of alcohol or drugs of abuse in bodily substances."  Ohio Adm.Code 3701-53-06(C).  Ohio Adm.Code 3701-53-05, "Collection and handling of blood and urine specimens," requires that urine specimens be "collected according to the laboratory protocol as written in the laboratory procedure manual."  Ohio Adm.Code 3701-53-05(D).

{¶ 12} Forensic scientist Elizabeth Wolford testified that she followed the laboratory manual for the state highway patrol crime lab when analyzing Topolosky's urine sample.  Topolosky now claims that this testimony was insufficient, and that the state was required to introduce the applicable manual to substantiate the procedures.  We find no case law, nor statutory or regulatory support for this assertion.  Topolosky also argues on appeal that the technician's assertion that she followed the laboratory manual is a conclusory statement of law.  To the contrary, we find that it is a simple statement of fact made by a witness which the trial court was free to accept or reject.

{¶ 13} Topolosky cannot merely speculate that Wolford did not comply with the manual, nor impose a presumption that the absence of the manual conclusively establishes, by negative inference, that the procedures were not followed.  As a question of law, we conclude that the state was not required to introduce a copy of the procedure manual in conjunction with the actual technician's testimony regarding the analytical process.  As a question of fact, we find that the testimony supports the trial court's conclusion that the state proved substantial compliance with testing procedures.  Topolosky's first assignment of error is overruled.

## C.  Second Assignment of Error — Sodium Fluoride

{¶ 14} Topolosky's second assignment of error asserts that the trial court should have found that there was insufficient evidence to establish that a chemical additive, sodium fluoride, had been properly placed in the collection vial prior to collection of

Topolosky's urine sample. He also questions whether the presence or absence of sodium fluoride was properly accounted for in the subsequent analysis.

{¶ 15} Ohio State Highway Patrol Trooper Kristi Comstock, the arresting officer, testified that she had prepared and supplied her highway patrol urine sample collection kit, but had not personally observed collection of the sample because this duty was referred to a male officer, Officer Adam Daron of the Reynoldsburg Division of Police. Trooper Comstock testified that she had added the sodium fluoride capsule to the sample container before furnishing it to Officer Daron and checked the corresponding box on the sample submission form.

{¶ 16} Officer Daron testified that he did not specifically recall the presence of a sodium fluoride tablet in the collection vial prior to obtaining the urine sample from Topolosky. Officer Daron testified that he collected the sample and sealed the vial according to required procedures.

{¶ 17} Lab analyst Wolford testified that, while the sodium fluoride capsule is ordinarily visible in the urine sample and does not dissolve completely, she saw no trace of the capsule when given the opportunity to examine photographs of Topolosky's urine sample. Wolford did not test for sodium fluoride in the sample.

{¶ 18} While former versions of Ohio Adm.Code 3701-53-05 mandated the addition of chemical agents, explaining the presence of sodium fluoride tablets in the standard state highway patrol collection kit, amendments in 1997 eliminated the requirement and the current version of Ohio Adm.Code 3701-53-05 is silent regarding the use of sodium fluoride or other chemical preservatives or stabilizing agents.

{¶ 19} Topolosky argues that the use of sodium fluoride as a preservative in a urine sample is not required by law, and the addition of this chemical represents an adulteration of the urine sample. Topolosky, however, presented no evidence regarding the impact of sodium fluoride on the accuracy of analysis of a urine sample for drugs or alcohol. The presence or absence of this additive, therefore, absent evidence of its adulterating effect, does not conclusively preclude use of the resulting analysis. *See State v. Neale*, 5th Dist. No. 2011 CA 00090, 2012-Ohio-2530, ¶ 37; *State v. Miracle*, 12th Dist. No. CA2001-07-169, 2002-Ohio-4480, ¶ 18. Topolosky's second assignment of error is overruled.

### D.  Third Assignment of Error — Wolford's Testimony

{¶ 20} Topolosky's third assignment of error asserts that the trial court erred in allowing Wolford to testify regarding her analysis of his urine sample.  Topolosky argues that the state failed to establish that Wolford had undergone requisite proficiency tests specified by the Ohio Administrative Code for lab technicians in a testing facility.  The director of the Ohio State Highway Patrol Crime Laboratory, Joseph Jones, testified that he had no personal knowledge of Wolford having passed a proficiency examination.

{¶ 21} Ohio Adm.Code 3701-53-08(A) requires persons employed as laboratory technicians or directors to "be subject to surveys and proficiency examinations by representatives of the director of health."  Such examinations "may be conducted at the director's discretion."  Ohio Adm.Code 3701-53-08(A).  Ohio Adm.Code 3701-53-08(A)(2) states that the proficiency examination may consist of the successful completion of a "proficiency examination administered by a national program for proficiency testing using the techniques or methods for which the permit is held or sought."  The plain language of the governing regulation, therefore, provides only that proficiency examinations and surveys are administered at the discretion of the director, and may be delegated to an accredited outside entity.  The regulatory language does not require a personal assessment of proficiency by the director or his in-house representative. *See generally State v. Love*, 6th Dist. No. OT-95-042 (Apr. 26, 1996) (rejecting comparable challenge to prior, less stringent, version of Ohio Adm. Code 3701-53-08(A)).

{¶ 22} Wolford testified that she was subject to a yearly proficiency examination administered by the College of American Pathology.  The laboratory as a whole participated in four such proficiency examinations per year.  During Wolford's employment, the laboratory had never failed a proficiency examination.  She was certified by the laboratory director as competent to test biological samples for drugs, "using immunoassay, gas chromatography, and mass spectroscopy."  (Tr. 30.)  This testimony sufficiently demonstrated compliance with Ohio Adm.Code 3701-53-08.  Topolosky's third assignment of error is overruled.

### E.  Fourth Assignment of Error — OVI Per Se Statute

{¶ 23} Topolosky's fourth assignment of error asserts that Ohio's marijuana OVI per se statute is both unconstitutionally vague and violates constitutional guarantees of

due process and equal protection. Ohio courts must give legislative enactments a presumption of validity. *State v. Tanner*, 15 Ohio St.3d 1, 2 (1984). Before declaring an enactment of the legislature to be unconstitutional, "it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142 (1955), paragraph one of the syllabus; *accord Desenco, Inc. v. Akron*, 84 Ohio St.3d 535, 538 (1999). "It is a well-settled principle of statutory construction that, where constitutional questions are raised, courts will liberally construe a statute to save it from constitutional infirmities." *Goodrich v. Ohio Unemp. Comp. Rev. Comm.*, 10th Dist. No. 11AP-473, 2012-Ohio-467, ¶ 10.

{¶ 24} In determining the constitutionality of a legislative act, we first determine whether the party is challenging the act on its face or as applied to a particular set of facts. *Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, ¶ 14. An "as applied" challenge asserts that a statute is unconstitutional as applied to the challenger's particular conduct. *Columbus v. Meyer*, 152 Ohio App.3d 46, 2003-Ohio-1270, ¶ 31 (10th Dist.). In contrast, a facial challenge asserts that the law is unconstitutional as applied to the hypothetical conduct of any person, without reference to the defendant's specific conduct and circumstances. *Id.* In a facial challenge, Topolosky must establish "that no set of circumstances exists under which the [law] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Although this assignment of error is captioned as an as-applied challenge, Topolosky does not allege particular facts or any special context in the application of the law to him. As a result, we limit our review to a challenge to the statute's constitutionality on it face.

{¶ 25} The first challenge here is the alleged vagueness of R.C. 4511.19(A)(1)(j)(viii)(II). If a statute " 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' " the statute may be found void under the due process clauses of the Fourteenth and Fifth Amendments to the United States Constitution and the Ohio Constitution, Article I, Section 16. *Tanner* at 3, quoting *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972). In applying this standard, however, " '[i]mpossible standards of specificity are not required. * * * The test is whether the language conveys sufficiently definite warning as to the proscribed conduct

when measured by common understanding and practices' " *State v. Reeder*, 18 Ohio St.3d 25, 26 (1985), quoting *Jordan v. De George*, 341 U.S. 223, 231-32 (1951).

{¶ 26} R.C. 4511.19(A)(1)(j)(viii)(II) prohibits per se the operation of a motor vehicle by a person presenting a concentration equal to or greater than 35 nanograms of marijuana metabolite per liter of urine. Topolosky asserts that because the level of metabolites will not reliably correspond to a given level of marijuana consumption in different persons, the statute fails to indicate in a manner comprehensible to ordinary persons the nature of the prohibited conduct, i.e., the prohibited quantity of marijuana that may not be consumed before driving in Ohio.

{¶ 27} The per se OVI provision of R.C. 4511.19(A)(1)(j)(viii)(II) clearly prohibits the operation of a motor vehicle if the driver presents at least 35 nanograms of marijuana metabolite by urine or at least 50 nanograms of marijuana metabolite by blood. "There is nothing vague, unclear, or indefinite" in this statutory language. *State v. Whalen*, 1st Dist. No. C-120449, 2013-Ohio-1861, ¶ 11. We agree with the First District that a person of ordinary intelligence can both understand the meaning of marijuana metabolite and the prohibition against driving after the consumption of marijuana.

{¶ 28} Nor is the statute overly vague merely because the quantity, method, or timing of marijuana consumption needed to achieve metabolite levels violating the statute will vary from person to person. Topolosky did not present expert testimony at the hearing regarding the relationship between metabolite levels, impairment, time lapse in the presence of metabolites after use, and the degree of variation between individuals in these factors. We have also specifically rejected such arguments in the parallel cases regarding per se alcohol prohibitions: "[w]hile it true that most people will be unaware of the exact point in their alcohol consumption when the test results will reach the statutory standard, that alone does not render [the per se alcohol statute] unconstitutional for vagueness. [The statute] warns anyone contemplating driving an automobile while drinking alcoholic beverages that there is a certain point at which he will have consumed sufficient alcoholic beverages to make illegal his operation of a motor vehicle." *State v. Woerner*, 16 Ohio App.3d 59, 60 (10th Dist.1984). *See also Tanner* at 3. In keeping with this precedent, we hold that R.C. 4511.19(A)(1)(j)(viii)(II) is not void for vagueness.

{¶ 29} In so holding, we note that Topolosky introduces various arguments on appeal regarding the potential legalization of marijuana in Ohio and recent decriminalization in numerous other states.[1] Other state's legalization does not influence our reasoning in this case. The state's brief on appeal makes clear that the state takes the position that the object of the statute is not the prohibition of marijuana use, which is addressed in other aspects of the criminal code. The statute implements a bar to impaired driving, regardless of the legality of the substance involved. This is reflected by the fact that the statute does not bar trace levels of metabolite, which would reflect any level of consumption of the illegal substance, but only prohibits metabolites at a level that the legislature deemed dangerous in a driver. The notice of prohibited conduct here is clearly that driving while impaired is not legal in Ohio, and this is not dependent on the present or future illegality of the impairing substance in Ohio or any other jurisdiction.

{¶ 30} Topolosky next asserts that Ohio's per se marijuana statute violates due process and equal protection guarantees under the United States and Ohio constitutions. In practice, his arguments on appeal focus solely on equal protection. In an equal protection claim, government actions that affect suspect classifications or fundamental interests are subject to strict scrutiny by the courts. *Eppley v. Tri-Valley Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 56, 2009-Ohio-1970, ¶ 14. In the absence of a suspect classification or fundamental interest, the state action is subject to a rational basis test. *Id.* Under the rational basis test, we will uphold the statute if it bears a rational relationship to a legitimate governmental interest. *Adamsky v. Buckeye Local School Dist.*, 73 Ohio St.3d 360, 362 (1995).

{¶ 31} There is no assertion here that either consumers of marijuana or drivers of motor vehicles constitute a suspect class, or that operating a motor vehicle or consuming marijuana are fundamental rights. We therefore apply the rational-basis test to evaluate the constitutionality of R.C. 4511.19(A)(1)(j)(viii)(II). *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, ¶ 49.

{¶ 32} Pursuant to the rational-basis test, the statute survives constitutional scrutiny if it is reasonably related to implementation of a legitimate government interest.

---

[1] On November 3, 2015, measures to pass the legalization of marijuana failed in Ohio.

*State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 18.  It is well-established in Ohio, and Topolosky does not dispute, that the prohibition of impaired driving is reasonably related to effectuate government interest in reducing hazard presented to the travelling public and the greater community of harm.  *Columbus v. Brown*, 10th Dist. No. 05AP-344, 2005-Ohio-6102, ¶ 11.  We reiterate that our discussion relies not on the state's permissible objective of criminalizing and suppressing marijuana use generally, but on the prohibition against impaired driving, whether stemming from illegal substances (marijuana) or legal ones (alcohol).  We therefore will not further address Topolosky's assertion that the statute impermissibly criminalizes conduct that was legal when performed and impermissibly restrains travel and trade among the states for persons who may consume marijuana legally in their home state.

{¶ 33} Conceding that the statute intends to address a permissible government interest (the prohibition of impaired driving) Topolosky argues that there is no proven link between the specific type of marijuana metabolite found in his urine and an actual impairment of driving ability that would create a danger to other drivers and society in general.  He argues that the statute impermissibly discriminates against drivers who have consumed marijuana, present with metabolites in their urine, but are not actually impaired.

{¶ 34} The legislature has selected, as the discriminating factor in a determination of presumed impairment under the marijuana OVI per se statute, a level of metabolite defining the point at which the best evidence before the legislature indicated that an individual cannot operate a motor vehicle without posing a substantially increased risk of harm. *State v. Ossege*, 12th Dist. No. CA2013-11-086, 2014-Ohio-3186, ¶ 33, fn. 4.  Again, Topolosky has presented no expert testimony to rebut the legislature's articulated and supported conclusion that marijuana use results in impaired driving and metabolites reflect an impairing level of marijuana use by the person testing at or above the statutory threshold.  While Topolosky discusses foreign-state cases disagreeing with this proposition to varying degrees, the conclusions of other courts on disputed factual issues do not bear the same persuasive weight as legal discussions and rationales.

{¶ 35} Finally, Topolosky points to decisions from two other states that interpreted similar, if not strictly comparable, statutes.  In *People v. Feezel*, 486 Mich. 184 (2010), the

Michigan Supreme Court  addressed an impaired driving statute that barred driving by a person having " 'in his or her body any amount of a controlled substance listed in schedule 1 under [Mich.Comp.Laws 333.7212].' " *Id.* at 206, quoting Mich.Comp.Laws 257.625(8) (bracketed change inserted).  The referenced schedule, in turn, included marijuana and its "derivatives," but did not mention metabolites.  *Id.*  In a decision founded on the precise language of the sections involved, the court concluded that the metabolites in the defendant's system did not constitute marijuana or a derivative, and courts could not "[ignore] the Legislature's definition of 'marijuana' and the Legislature's list of schedule 1 controlled substances, which do not contain the term 'metabolite.' "  *Id.* at 207. Because the defendant presented only metabolites when tested, his conviction could not stand.  *Id.* at 211-12.

{¶ 36}  *Feezel* is obviously distinguishable from the case before us in two important ways.  First, the Michigan law did not mention and explicitly ban metabolites, as R.C. 4511.19(A)(1)(j)(viii)(II) does.  Second, the Michigan law makes any tested level of scheduled substance a violation, in contrast to the defined levels used in R.C. 4511.19(A)(1)(j)(viii)(II) to correlate drug use with driving impairment.  *Feezel* is not persuasive authority in our case.

{¶ 37}  *State ex rel. Montgomery v. Harris*, 234 Ariz. 343 (2014), in contrast, examined a statute that did explicitly mention metabolites, but barred them at any level. "Count two alleged a violation of A.R.S. § 28-1381(A)(3) ('the (A)(3) charge'), which prohibits driving a vehicle '[w]hile there is any drug defined in § 13-3401 or its metabolite in the person's body.' "  *Id.* at ¶ 3.  The Arizona Supreme Court found the statute ambiguous based on the varying scientific interpretations of "metabolite" and the poor evidence correlating metabolites with impairment: "this interpretation would create criminal liability regardless of how long the metabolite remains in the driver's system or whether it has any impairing effect.  For example, at oral argument the State acknowledged that, under its reading of the statute, if a metabolite could be detected five years after ingesting a proscribed drug, a driver who tested positive for trace elements of a non-impairing substance could be prosecuted."  *Id.* at ¶ 15.

{¶ 38} The reasoning expressed by the *Montgomery* court is not applicable in Ohio, which has chosen, unlike Arizona, to set per se liability at a minimum metabolite

level. The Arizona courts also appear to have had the benefit of expert testimony, which we lack. The *Montgomery* court was also swayed by recent decriminalization legislation in Arizona: "Additionally, this interpretation would criminalize otherwise legal conduct. In 2010, Arizona voters passed the Arizona Medical Marijuana Act ("AMMA"), legalizing marijuana for medicinal purposes." *Montgomery* at ¶ 16. That is not at present the situation in Ohio.

{¶ 39} Because we find that R.C. 4511.19(A)(1)(j)(viii)(II) is not void for vagueness and does not violate constitutional guarantees of equal protection and due process, we overrule Topolosky's fourth assignment of error.

## IV. Disposition

{¶ 40} Based on the foregoing reasons, Topolosky's four assignments of error are overruled and the judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

TYACK and HORTON, JJ., concur.

_____