The STATE of Ohio, Appellee,

v.

GORDON, Appellant.

[Cite as *State v. Gordon,* 155 Ohio App.3d 357, 2003-Ohio-6160.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 82180.

Decided Nov. 20, 2003.

</div>

William D. Mason, Cuyahoga County Prosecuting Attorney, and Sean Jones, Assistant Prosecuting Attorney, for appellee.

Gary H. Levine, for appellant.

---

FRANK D. CELEBREZZE JR., Judge.

{¶ 1} Defendant, Michael E. Gordon, appeals from his conviction after a bench trial on two counts of aggravated vehicular assault and one count of driving under the influence and claims that the state of Ohio failed to introduce sufficient evidence to support all material elements of the crimes.

{¶ 2} On July 12, 2000, at approximately 7:04 p.m., Michael E. Gordon ("Gordon") was driving his sport utility vehicle on Cranwood Boulevard in Garfield Heights, Ohio. Gordon lost control of his vehicle, passed over the center line, and struck another vehicle. After striking the vehicle, Gordon's vehicle slid sideways into the front yard of a residence, hitting a nine-year-old girl who was sitting there on her bicycle. Both the driver of the other vehicle and the nine-year-old girl suffered serious injuries.

{¶ 3} Officer Dupont arrived at the scene and spoke with Gordon. The officer immediately noticed an odor of alcohol on Gordon's breath. As a result, Officer Dupont asked Gordon to submit to a field sobriety test. Gordon refused to submit and requested immediate medical attention.

{¶ 4} Officer Dupont followed as Gordon was transported to the hospital by the emergency squad. At the hospital, Officer Dupont remained with Gordon. At approximately 8:59 p.m., Gordon was treated by medical personnel and voluntarily submitted to blood and urine tests. Officer Dupont observed as Gordon provided the urine sample from behind a hospital curtain.

{¶ 5} The test on the urine, which was performed by the Cuyahoga County Coroner's Office, revealed that Gordon's concentration of ethanol was .16 grams per deciliter, .02 over the legal limit of .14. The coroner's office also identified marijuana metabolites present in Gordon's urine sample.

{¶ 6} Based on the result of the urine test, Officer Dupont issued Gordon a ticket for driving while under the influence of alcohol and a ticket for driving left of center.

{¶ 7} On May 16, 2001, the Cuyahoga County Grand Jury returned an indictment charging two counts of aggravated vehicular assault, in violation of R.C. 2903.08, and one count of driving while under the influence, in violation of R.C. 4511.19.

{¶ 8} On June 29, 2001, Gordon filed a motion to suppress evidence contesting the admissibility of the blood and urine tests. The trial court granted the motion to suppress, and the state appealed. On May 13, 2002, this court affirmed the suppression as to the blood-sample test, but reversed the trial court with respect to the urine-sample test.

{¶ 9} On October 8, 2002, Gordon waived a trial by jury. A bench trial ensued after which Gordon was found guilty on all counts. He was sentenced to four years on each count of aggravated vehicular assault, to be served consecutively. He was also sentenced to six months for driving while under the influence, to run concurrently with the sentences for aggravated vehicular assault. The instant appeal follows.

{¶ 10} The appellant presents the following assignment of error:

"The trial court erred in finding appellant guilty of two counts of aggravated vehicular assault in violation of R.C. 2903.06 where the state failed to introduce sufficient evidence in support of all material elements."

{¶ 11} In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:

{¶ 12} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" Id. at paragraph two of the syllabus.

{¶ 13} More recently, in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, the Ohio Supreme Court stated the following with regard to the "sufficiency" as opposed to the "manifest weight" of the evidence:

{¶ 14} " '[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. Black's Law Dictionary 6 Ed.1990, 1433. See, also, Crim.R. 29(A)(motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain the conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102

S.Ct. 2211, 72 L.Ed.2d 652, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560." Id. at 386–387, 678 N.E.2d 541.

{¶ 15} Finally, we note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case. *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 10 OBR 500, 462 N.E.2d 407.

{¶ 16} Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. *State v. Nicely* (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

{¶ 17} To support a conviction of aggravated vehicular assault under R.C. 2903.08(A)(1), the state must prove beyond a reasonable doubt that the defendant was operating a motor vehicle under the influence of alcohol[1] and as a proximate result caused serious physical harm to another person while operating that vehicle.

{¶ 18} R.C. 4511.19 specifically defines what the legislature intends "under the influence" to mean:

{¶ 19} "Driving while under the influence of alcohol or drugs or with certain concentration of alcohol in bodily substances; chemical analysis.

{¶ 20} "(A) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:

{¶ 21} "* * *

{¶ 22} "(4) The person has a concentration of fourteen-hundredths of one gram or more but less than two hundred thirty-eight-thousandths of one gram by weight of alcohol per one hundred milliliters of the person's urine;

{¶ 23} "* * *

{¶ 24} "(D)(1) In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section, * * * the court may admit evidence on the concentration of alcohol, drugs of abuse, or alcohol and drugs of abuse in the defendant's blood, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance withdrawn within two hours of the time of the alleged violation. * * *

---

1. R.C. 4511.19(A).

{¶ 25} "(D)(2) * * * fourteen-hundredths of one gram by weight of alcohol per one hundred milliliters of the defendant's urine, such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant."

{¶ 26} During trial, the state established the following: that the appellant was operating a sport utility truck; that the appellant lost control of his truck, crossed the center line, and struck another vehicle; that a nine-year-old girl and the driver of the other vehicle were seriously injured as a proximate result of the appellant's actions.

{¶ 27} The appellant challenges the final element of the crime, that he was operating his vehicle under the influence of alcohol. Appellant argues that the testimony of Dr. Jenkins was not conclusive proof of his impairment to drive a motor vehicle, constituting a reversal of his conviction. Appellant states that the medical expert could not determine with reasonable medical certainty whether the concentration of ethyl alcohol in appellant's urine bears any correlation to the concentration of ethyl alcohol in appellant's blood before the sample was taken. Appellant's argument is misplaced and not well taken.

{¶ 28} At trial, Dr. Jenkins of the coroner's office stated, "* * * using urine results to infer impairment is not scientifically valid * * * what you find in urine is a drug that has accumulated over time and is sitting in the bladder, not necessarily what is circulating in the blood and, therefore, reaching effectory sites in the brain and therefore giving an effect to the drug * * *." The testimony of Dr. Jenkins is taken out of context.

{¶ 29} It is not the job of a medical expert to determine with reasonable medical certainty the blood-alcohol concentration and impairment of the appellant at the moment of the crime from testing his urine. R.C. 4511.19 specifically sets forth guidelines in order to determine intoxication of a defendant at the moment of the crime. Dr. Jenkins's only duty was to test the concentration of alcohol in the appellant's urine using the approved testing procedures found in the Ohio Administrative Code. The results from the urinalysis are then compared to the alcohol limits for urine found in R.C. 4511.19 to determine whether the appellant was under the influence at the moment of the crime.

{¶ 30} Under the Revised Code, a person is considered under the influence of alcohol if a urine sample is withdrawn within two hours of the violation and the urinalysis test reveals that the concentration of alcohol is greater than .14 of one gram per hundred milliliters of urine. Furthermore, the test result may be considered with other competent evidence in determining the guilt or innocence of the defendant. In the instant case, the appellant's urine sample was withdrawn within two hours of the crime and tested .16. It is irrelevant that Dr. Jenkins could not determine from a urine sample the blood-alcohol level of the appellant at the moment of the crime. Intoxication of a defendant at the moment

of the crime is determined not by the opinion of an expert, but by the alcohol concentration limits set forth by the Ohio Revised Code for urine, blood, and breath. The medical expert need not determine the blood-alcohol concentration from the appellant's urine sample.

{¶ 31} If the appellant is trying to challenge the validity of urine testing under R.C. 4511.19, he has not properly raised the argument in the lower court. This court will assume that the alcohol concentration limits, the time limits for extraction, and the methods of testing a urine sample set forth by the legislature are valid.

{¶ 32} Furthermore, Dr. Jenkins testified on redirect that there exists a correlation between the blood-alcohol content and urine-alcohol content, which would indicate that the appellant was in fact intoxicated under the law at the moment of the crime:

{¶ 33} "Q. So in the first instance where—you are looking for a rise in alcohol content, that would be indicated by what?

{¶ 34} "A. There has been a relationship established between a blood alcohol concentration and a urine alcohol concentration in the post-absorptive stage. In that case, the urine concentration is higher than the blood concentration.

{¶ 35} "Q. I see. Okay. So in this case you had a figure of .16; is that correct?

{¶ 36} "A. Yes.

{¶ 37} "Q. And Mr. Gordon's alcohol level was obviously either increasing or decreasing; correct?

{¶ 38} "A. Yes.

{¶ 39} "Q. If it was decreasing, he would have had to have a higher concentration before the test was taken; correct?

{¶ 40} "A. Yes.

{¶ 41} "Q. And if it was increasing, that would indicate to you that he had more alcohol in his bloodstream than would be indicated by the urinalysis test; correct?

{¶ 42} "A. Yes."

{¶ 43} Because appellant was driving his vehicle under the influence of alcohol at the moment of the crime and thereby caused serious physical harm to another motorist and a nine-year-old pedestrian, the evidence presented by the state was sufficient to support his two convictions for aggravated vehicular assault.

Judgment affirmed.

SEAN C. GALLAGHER and JAMES D. SWEENEY, JJ., concur and concur separately.

James D. Sweeney, J., retired, of the Eighth Appellate District, sitting by assignment.

Sean C. Gallagher, Judge, concurring.

{¶ 44} I concur in judgment with the majority that the state offered sufficient evidence to support the convictions under R.C. 2903.08(A)(1), but write separately to address issues concerning the charging of the OMVI offense, application of the term "under the influence," and the challenge to the legitimacy of urine testing raised by appellant for a conviction under R.C. 4511.19(A)(4).

{¶ 45} The state of Ohio charged Gordon with aggravated vehicular assault under R.C. 2903.08(A)(1). This provision requires proof of an underlying OMVI, either operating a motor vehicle under the influence under R.C. 4511.19(A)(1) or operating a motor vehicle with a concentration of alcohol above the limits set under at least one of the three proscribed methods outlined in R.C. 4511.19(A)(2) to (7).

{¶ 46} In this case, the state charged Gordon under R.C. 4511.19(A)(4), a violation based on a person having a concentration of .14 of one gram or more but less than .238 of one gram by weight of alcohol per one hundred milliliters of the person's urine.

{¶ 47} In addition to the (A)(4) (urine sample) violation, the state could have simultaneously charged this offense under R.C. 4511.19(A)(1), alleging that Gordon was under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse. Driving under the influence, as outlined under R.C. 4511.19(A)(1), and the offenses of operating a vehicle with a prohibited blood, breath, or urine level under R.C. 4511.19(A)(2) to (7) are allied offenses of similar import. A person may be found guilty of both but may be convicted and sentenced for only one of the two. *Cincinnati v. Moore* (1989), Hamilton App. Nos. C–880689, C–880690, and C–880691, 1989 WL 136387. In effect, there are two separate types of offenses: (1) being under the influence, and (2) operating with a prohibited alcohol level in blood, breath, or urine. *State v. Wilcox* (1983), 10 Ohio App.3d 11, 10 OBR 17, 460 N.E.2d 323. In the instant case, the state failed to charge under R.C. 4511.19(A)(1).

{¶ 48} Even in the absence of field sobriety tests, due to Gordon's request for medical treatment, evidence of impaired driving under R.C. 4511.19(A)(1) could have been established by factors that include erratic driving, the accident, the commission of a traffic offense, the odor of alcohol, the admission of alcohol consumption, any noted observable physical conditions related to alcohol or drug consumption, or "blood shot" eyes, or slurred speech, to name just a few. Any of these factors, if believed by the trier of fact, could be used without a chemical test

result or field test results to support a conviction for OMVI under R.C. 4511.19(A)(1).

{¶ 49} The failure by the state to include an (A)(1) charge under R.C. 4511.19 resulted in the state's having to rely exclusively on the validity of the urine test result for the underlying OMVI conviction and the conviction under R.C. 2903.08(A)(1).

{¶ 50} The majority's reference to the language "under the influence" in relation to a violation under the "per se" limit of R.C. 4511.19(A)(4) is misplaced. The "under the influence" reference is applicable only to violations under R.C. 4511.19(A)(1).

{¶ 51} This distinction was made clear in an early decision involving Ohio's revamped OMVI law in *State v. Murphy* (1983), 7 Ohio Misc.2d 1, 7 OBR 51, 453 N.E.2d 1304, where the court held:

{¶ 52} "It is still a violation of law to operate a motor vehicle while under the influence of alcohol. R.C. 4511.19(A)(1). No longer, however, is this the sole basis for conviction. Effective March 16, 1983, it is now an offense for any individual to operate a motor vehicle with a prohibited concentration of alcohol as measured by blood, R.C. 4511.19(A)(2), urine, R.C. 4511.19(A)(4), or * * * breath, R.C. 4511.19(A)(3). The controversial 'per se' provisions mandate convictions exclusively on the quantity of alcohol, regardless of evidence of physical impairment or lack thereof. One may be in violation of driving under the influence without violating a 'per se' provision and vice versa."

{¶ 53} Gordon's urine sample reading was .16, or .02 above the proscribed limit under R.C. 4511.19(A)(4) in place at the time of the incident.[2]

{¶ 54} Gordon does not expressly challenge the testing procedures or methods utilized by the Cuyahoga County Coroner's toxicologist as mandated by the Ohio Department of Health regulations in the Ohio Adm.Code 3701–53 et seq. Rather, Gordon challenges the underlying sufficiency of urine testing as a scientific, reliable, and accurate determination of alcohol in a person's system at the time of operation.

{¶ 55} This unique challenge is based directly on the state's expert witness, Dr. Amanda Jenkins, Chief Toxicologist of the Cuyahoga County Coroner's Office,

---

2. House Bill No. 87, effective June 30, 2003, has reduced the per se limits for the concentration of alcohol in a person's blood, breath, or urine. The bill prohibits a person of any age from operating a motor vehicle within this state and from boating on the waters of this state if he has a concentration of .08 of 1 percent or more by weight of alcohol in his blood, a concentration of .08 of one gram or more by weight of alcohol per 210 liters of his breath, or a concentration of .11 of one gram or more by weight of alcohol per 100 milliliters of his urine (R.C. 1547.11[A] and 4511.19[A]).

who testified, in part, that "using urine results to infer impairment is not scientifically valid." Dr. Jenkins also testified that "urinalysis was an accepted method of testing under the Ohio Administrative Code."

{¶ 56} Gordon's reliance on *Miller v. Bike Athletic Co.* (1988), 80 Ohio St.3d 607, 687 N.E.2d 735, and Evid.R. 702 is misplaced. The very testimony Gordon uses to bring into question the validity of the urine test result is the same evidence Gordon seeks to exclude as unreliable. Nevertheless, logic would appear to dictate that the alcohol concentration in urine detected at the time of a test should have some correlation to the prohibitive level of alcohol in the blood at the time of operation that would indicate impairment. This, however, is not the requirement of the statute. The legal per se limits are just that, legal limits that, once established, create a strict liability offense. *State v. Cleary* (1986), 22 Ohio St.3d 198, 22 OBR 351, 490 N.E.2d 574; *State v. Grimsley* (1982), 3 Ohio App.3d 265, 3 OBR 308, 444 N.E.2d 1071. Thus, the Ohio legislature has set limits that create a point at which the legal operation of a vehicle is precluded, regardless of individual impairment.

{¶ 57} Further, an acquittal on an "impairment" charge under R.C. 4511.19(A)(1) is not an affirmative defense to a conviction under a per se violation under R.C. 4511.19(A)(2) to (7). A defendant can be acquitted on a charge alleging "impairment," while still being convicted under a prohibited level offense arising out of the same facts. *State v. Cox* (1985), Franklin App. Nos. 84AP–671 and 84AP–672, 1985 WL 10246, citing *State v. Jamison* (June 26, 1984), Franklin App. No. 83AP–1163, 1984 WL 5801.

{¶ 58} In *State v. Cox,* supra, the Tenth District held that guilt based on a chemical test result rather than individual impairment did not deny a defendant equal protection under the law. The court, citing *State v. Woerner* (1984), 16 Ohio App.3d 59, 16 OBR 63, 474 N.E.2d 354, stated:

{¶ 59} "The General Assembly has the constitutional authority to define offenses and presumably could prohibit the operation of motor vehicles when a motorist has consumed any alcohol. Although individual reaction to drinking a specified amount of alcohol may vary, the General Assembly has, after appropriate legislative hearings and presumably based upon scientific evidence, decided that there is universal impairment of motorists at or above the prescribed level. The fact that some persons may be more impaired at that level than others and still receive the same penalty does not render the statute constitutionally invalid."

{¶ 60} Gordon's challenge in this case goes to the very validity of using urine test results as the basis of his criminal conviction. The Supreme Court of Ohio, in *State v. Vega* (1984), 12 Ohio St.3d 185, 12 OBR 251, 465 N.E.2d 1303, held that the defendant cannot challenge the general reliability of alcohol-testing equipment. In effect, *Vega,* a very controversial case, held that a general attack on the

science of the test would not be allowed, while a specific challenge to the test results of the individual defendant would be permissible. Id. Although *Vega* involved a breath-testing challenge, there is nothing in the analysis to suggest that the court would view blood or urine testing any differently than breath. The majority stated:

{¶ 61} " '[The judiciary must recognize] the necessary legislative determination that breath tests, properly conducted, are reliable irrespective that not all experts wholly agree and that the common law foundational evidence has, for admissibility, been replaced by statute and rule; and that the legislative delegation was to the Director of Health, not the court, the discretionary authority for adoption of appropriate tests and procedures, including breath test devices.' " Id. at 188–189, 12 O.B.R. 251, 465 N.E.2d 1303, quoting *State v. Brockway* (1981), 2 Ohio App.3d 227, 232, 2 OBR 247, 441 N.E.2d 602.

{¶ 62} Nevertheless, the controversial legacy of *Vega* cannot be ignored. The question of whether the Fourteenth Amendment prohibition against conclusive presumptions in criminal cases applies to OMVI cases involving urine testing remains unresolved. See Palmer, *State v. Vega* and Ohio's O.M.V.I. Law: Per Se Unconstitutional? (1995), 24 Cap.U.L.Rev. 687.

{¶ 63} Clearly, if the focus of "per se" or "prohibited level" offenses was the "impairment" of the individual, the defendant's assignment of error, in light of Dr. Jenkins's analysis, would have to be sustained.

{¶ 64} The Ohio Supreme Court has upheld the authority of the Ohio legislature to authorize the Ohio Department of Health to determine the techniques or methods for chemically analyzing a person's blood breath or urine. See *Vega*, supra; R.C. 3701.143. In light of this holding, I agree with the majority that appellant's assignment of error is overruled.

{¶ 65} Had Gordon brought in his own expert to challenge his specific results or used Dr. Jenkins under cross-examination to challenge the results in his specific test, *Vega* would not be applicable. Further, this case leaves unresolved the question of a challenge to urine testing, not based on the general reliability of the test but on the issue of whether the Director of the Ohio Department of Health has done enough to determine, or cause to be determined, under R.C. 3701.143, that the latest and best techniques and methods are in place for urine testing.[3]

---

3. R.C. 3701.143 reads as follows: "For purposes of section 4511.19 of the Revised Code, the director of health shall determine, or cause to be determined, techniques or methods for chemically analyzing a person's blood, urine, breath, or other bodily substance in order to ascertain the amount of alcohol, a drug of abuse, or alcohol and a drug of abuse in the person's blood, urine, breath, or other bodily substance. The director shall approve satisfacto-

{¶ 66} Nonetheless, I concur with the majority opinion that the evidence presented was sufficient to support the challenged convictions.

James D. Sweeney, J., concurs in the foregoing concurring opinion.

---

ry techniques or methods, ascertain the qualifications of individuals to conduct such analyses, and issue permits to qualified persons authorizing them to perform such analyses. Such permits shall be subject to termination or revocation at the discretion of the director."