[Cite as *State v. Naylor*, 2024-Ohio-1648.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

ANTHONY F. NAYLOR,

        Defendant-Appellant.

CASE NOS.  2023-P-0015
                2023-P-0021

Criminal Appeals from the
Court of Common Pleas

Trial Court Nos.  2021 CR 00158
                 2022 CR 01179

# **O P I N I O N**

Decided: April 29, 2024
Judgment: Affirmed and remanded

*Victor V. Vigluicci*, Portage County Prosecutor; *Pamela J. Holder* and *Kristina K. Reilly*, Assistant Prosecutors, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Adam Parker*, The Goldberg Law Firm, LLC, 323 West Lakeside Avenue, Suite 450, Cleveland, OH 44113 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1}    Appellant, Anthony F. Naylor ("Mr. Naylor"), appeals from the judgment of the Portage County Court of Common Pleas sentencing him to an aggregate prison term of 11 to 14.5 years following his convictions for aggravated vehicular homicide, aggravated vehicular assault, operating a vehicle while under the influence of a listed metabolite of a controlled substance, and driving left of the center line.

{¶2}    This case involves a tragic event in which Mr. Naylor's vehicle crashed head-on into another vehicle, killing the passenger, Essence Shaw ("Ms. Shaw"), and

seriously injuring the driver, Carlette Darby ("Ms. Darby"). A subsequent test of Mr. Naylor's urine showed the presence of a marijuana metabolite at nearly three times the legal limit.

{¶3} Mr. Naylor raises four assignments of error, contending (1) the trial court erred in excluding the testimony of his proposed expert witness; (2) plain error occurred when the prosecutor misrepresented the law during closing argument; (3) his convictions for aggravated vehicular homicide/assault were not supported by sufficient evidence; and (4) R.C. 4511.19(A)(1)(j)(viii)(II), the provision that prohibits operating a vehicle while having a proscribed level of marijuana metabolite in one's urine or blood, is unconstitutional.

{¶4} After a careful review of the record and pertinent law, we find as follows:

{¶5} (1) The trial court acted within its discretion in excluding the testimony of Mr. Naylor's proposed expert. Since Mr. Naylor was charged with violating R.C. 4511.19(A)(1)(j)(viii)(II), a per se offense, the state only had to prove he drove with proscribed amount of marijuana metabolite in his system. The state's obligation to prove proximate cause did not require it to prove Mr. Naylor was actually impaired. In addition, the expert's proposed testimony challenged the reliability of the state's testing method, not Mr. Naylor's specific test results, which is precluded.

{¶6} (2) Mr. Naylor has not established plain error regarding the prosecutor's alleged misrepresentation of the law during closing argument. "Per se" is an accurate characterization of Mr. Naylor's offense under R.C. 4511.19(A)(1)(j)(viii)(II).

{¶7} (3) Mr. Naylor's convictions for aggravated vehicular homicide/assault were supported by sufficient evidence. The state was not required to prove Mr. Naylor's

2

marijuana metabolite level had any impact on his ability to drive safely. Since there is no basis to conclude that counts 1 and 3 were not supported by sufficient evidence, any error regarding the merged offenses in counts 2 and 4 would be harmless.

{¶8} (4) R.C. 4511.19(A)(1)(j)(viii)(II) is not void for vagueness because a person of ordinary intelligence is capable of understanding the prohibited conduct. The statute does not violate substantive due process because it is rationally related to the legitimate governmental interest of highway safety and keeping impaired drivers off the road.

{¶9} Thus, Mr. Naylor's assignments of error are without merit, and we affirm the judgment of the Portage County Court of Common Pleas. However, this matter is remanded for the trial court to issue a nunc pro tunc sentencing entry correcting certain clerical errors.

## Substantive and Procedural History

{¶10} In the afternoon of September 5, 2020, Robert Wagner was traveling westbound on Route 5 in Portage County when he observed a black Nissan in front of him driving "all over the road." It was later determined that Mr. Naylor was the driver of the Nissan. Mr. Wagner observed Mr. Naylor veer off the left side of the road into the dirt and almost hit the guardrail. Mr. Naylor then crossed over the yellow line into the opposite lane. Mr. Wagner eventually pulled up next to Mr. Naylor at a stop light. He observed that the front of Mr. Naylor's car was "all banged up" and that Mr. Naylor was bobbing his head from side to side and back and forth. Mr. Wagner called the police, reported what he had observed, and provided Mr. Naylor's license plate number. Mr. Naylor pulled into a gas station and stopped at the gas pumps but did not exit his vehicle. Several minutes later, Mr. Naylor reversed course and began driving eastbound on Route 5.

3

{¶11} Trooper Parillo of the Ohio State Highway Patrol ("OSHP") was dispatched to a call of a reckless driver. She went to the gas station, headed westbound, and searched the area but was unable to locate the Nissan.

{¶12} Shannon Truax ("Ms. Truax") was driving eastbound on Route 5 when Mr. Naylor's vehicle approached her from behind. He was driving so erratically that she thought he was going to rear-end her and run her off the road. She sped up to create some distance, while Mr. Naylor weaved in and out of his lane. While watching Mr. Naylor in her mirrors, she observed him drive left of center, swerve back into his lane, and collide head-on into a westbound vehicle.

{¶13} Ms. Darby was driving a Chevy Cobalt westbound on Route 5 with her front-seat passenger, Ms. Shaw. According to Ms. Darby, Mr. Naylor's vehicle crossed the center line from the other direction and began driving head-on toward her. She tried to avoid him by turning into the opposite lane, at which time Mr. Naylor swerved into that lane and collided head-on with her vehicle.

{¶14} Sgt. Mace of the OSHP arrived at the scene and extinguished a small fire under the hood of Ms. Darby's vehicle. He observed that Ms. Darby and Ms. Shaw appeared to have more significant injuries than Mr. Naylor. Trooper Parillo arrived, and she and Sgt. Mace attempted to remove Ms. Darby and Ms. Shaw from the Cobalt. Emergency Medical Services and the fire department arrived and had to use mechanical means to extract them.

{¶15} Sgt. Mace attended to Mr. Naylor, who was also trapped in his vehicle. Mr. Naylor said he was driving to his aunt's house in Stow, although Sgt. Mace noticed that location was in the opposite direction. Mr. Naylor also said his vehicle experienced a

4

mechanical failure that made him drive over the center line and cause the collision. Sgt. Mace found a mostly consumed bottle of Remy Martin (a brand of cognac) in the back seat of Mr. Naylor's vehicle. Sgt. Mace also discovered that Mr. Naylor's license plate matched that of the reckless driver Mr. Wagner had reported.

{¶16} Ms. Shaw was pronounced deceased at the scene. Ms. Darby and Mr. Naylor were transported to a nearby hospital.

{¶17} Ms. Darby was life-flighted to a Cleveland hospital, where she woke up five days later. She suffered a broken pelvis in three places; a broken heel, toe, and ankle; broken ribs; a grade two liver laceration; and a laceration on her spleen. She received two surgeries and anticipated a third. She required stitches on her right leg and left inner thigh and staples in her lower abdomen and left hip. She has scars on her arms, hands, and lower back. She is unable to work because she cannot stand for lengthy periods of time.

{¶18} Sgt. Mace spoke with Mr. Naylor at the hospital and smelled an odor of alcoholic beverage on his breath. He administered the horizontal gaze nystagmus test and observed six out of six clues. Mr. Naylor denied any alcohol use. He said his power steering pump had burned out and caused him to drive over the center line. In Sgt. Mace's experience, however, a power steering failure would not cause a vehicle to travel left of center. Sgt. Mace requested a urine sample, which Mr. Naylor provided. Trooper Parillo also spoke with Mr. Naylor at the hospital, and he admitted to consuming three shots of Remy Martin about an hour before the crash.

{¶19} Trooper Tucci of the OSHP performed a crash reconstruction at the scene. He concluded that Mr. Naylor's vehicle was left of center and returned to the eastbound

5

lane, where it collided with Ms. Darby's vehicle. Had Mr. Naylor remained within his lane boundaries, Ms. Darby would not have had to swerve left, and the collision could have been avoided. Trooper Tucci did not examine Mr. Naylor's power steering pump because it was damaged in the crash. Based on his observations and experience, however, it would have played no role in the crash.

{¶20} Eric Fashano-Soltis ("Mr. Fashano-Soltis"), a forensic scientist for the OSHP, analyzed Mr. Naylor's urine sample using a gas chromatograph mass spectrometer. The test yielded a result of 103.22 nanograms of THC metabolite per milliliter (plus or minus 10.32 nanograms per milliliter), which was over the legal limit of 35 nanograms per milliliter.

{¶21} The Portage County Grand Jury indicted Mr. Naylor on the following counts:

| 1 | Aggravated vehicular homicide, a second-degree felony, in violation of R.C. 2903.06(A)(1)(a) |
| 2 | Aggravated vehicular homicide, a third-degree felony, in violation of R.C. 2903.06(A)(2)(a) |
| 3 | Aggravated vehicular assault, a third-degree felony, in violation of R.C. 2903.08(A)(1)(a) |
| 4 | Vehicular assault, a fourth-degree felony, in violation of R.C. 2903.08(A)(2)(b) |
| 5 | Operating a vehicle while under the influence of alcohol or drug of abuse ("OVI"), a first-degree misdemeanor, in violation of R.C. 4511.19 |
| 6 | Operating a vehicle while under the influence of a listed metabolite of a controlled substance, a first-degree misdemeanor, in violation of R.C. 4511.19(A)(1)(j)(viii)(II) |
| 7 | Driving left of the center line, a minor misdemeanor, in violation of R.C. 4511.29(A) |

{¶22} Based on a separate incident on February 27, 2021, the grand jury indicted Mr. Naylor on the following additional counts:

| 8 | OVI, a first-degree misdemeanor, in violation of R.C. 4511.19(A)(1)(a) and 4511.19(G) |

6

| 9 | OVI, a first-degree misdemeanor, in violation of R.C. 4511.19(A)(1)(h) and 4511.19(G) |
|---|---|

{¶23} Mr. Naylor entered not guilty pleas to the charges. The trial court subsequently dismissed count 5 on the state's motion.

{¶24} During discovery, the defense submitted a report from its proposed expert, Robert J. Belloto, Jr. ("Dr. Belloto"), who sought to testify that the marijuana metabolite level in Mr. Naylor's urine played no role in the crash and that OSHP's testing method was not a "true mass spectrometry confirmation." The state filed a motion to exclude Dr. Belloto's testimony based on relevance and the danger of confusing/misleading the jury. Mr. Naylor opposed the state's motion during a pretrial hearing. The trial court filed a judgment entry granting the state's motion.

{¶25} Mr. Naylor filed a motion to sever counts 8 and 9 based on prejudicial joinder, which the trial court overruled. Mr. Naylor subsequently entered written and oral pleas of guilty to counts 8 and 9. At a change of plea hearing, the trial court accepted Mr. Naylor's guilty pleas, found him guilty, and ordered a presentence investigation ("PSI").

{¶26} Mr. Naylor also filed a motion to dismiss counts 1, 3, and 6, contending that R.C. 4511.19(A)(1)(j)(viii)(II) is unconstitutional. The state filed a response opposing Mr. Naylor's motion. The trial court overruled Mr. Naylor's motion at the start of trial.

{¶27} The case was tried to a jury on counts 1 through 4 and count 6 (renumbered as count 5) and to the bench on count 7. The state presented testimony from Mr. Wagner, Ms. Truax, Sgt. Mace, Ms. Darby, Mr. Fashano-Soltis, Trooper Parillo, and Trooper Tucci. The state's exhibits included photos of the crash site, the crash reconstruction report, and the urine toxicology report.

7

{¶28} Following the state's case-in-chief, the defense moved for acquittal pursuant to Crim.R. 29, which the trial court overruled. The defense proffered Dr. Belloto's testimony and report for the record and rested. The defense renewed its motion for acquittal, which the trial court overruled.

{¶29} The jury found Mr. Naylor guilty on counts 1 through 5, and the trial court found him guilty on count 7. The trial court ordered a PSI and victim impact statements and set the matter for sentencing.

{¶30} At the sentencing hearing, the trial court merged count 2 into count 1 and count 4 into count 3. The trial court imposed the following sentences:

| Count 1 | A minimum of seven years in prison; Lifetime driver's license suspension |
|---|---|
| Count 3 | Four years in prison to be served consecutively; 10-year license suspension |
| Count 5 | Six months in jail to be served concurrently; One-year license suspension; $370 fine |
| Count 7 | Six months in jail to be served concurrently, resulting in an aggregate prison sentence of 11 to 14.5 years |
| Count 8 | One-year license suspension; $370 fine |
| Count 9 | One-year license suspension; $370 fine |

{¶31} Mr. Naylor appealed[1] and raises the following four assignments of error:

{¶32} "[1.] The Trial Court Erred in Excluding the Testimony of Robert Belloto[.]

{¶33} "[2.] Plain Error Occurred When The State Misrepresented The Law During Closing Argument[.]

---

1. The sentencing entry reflects the trial court also sentenced Mr. Naylor in a separate case (2022 CR 00179) following his guilty plea to a felony charge of vandalism. This court ordered the filing of a separate notice of appeal and subsequently consolidated them for all purposes. Mr. Naylor asserts no assignments of error regarding the 2022 case; therefore, we do not discuss it.

8

Case Nos. 2023-P-0015, 2023-P-0021

**{¶34}** "[3.] Appellant's Convictions for Aggravated Vehicular Homicide and Aggravated Vehicular Assault Rest on Insufficient Evidence[.]

**{¶35}** "[4.] R.C. § 4511.19(A)(i)(j)(viii)(II) [sic] is unconstitutional, because it violates substantive due process and is void for vagueness[.]"

### Expert Testimony

**{¶36}** In his first assignment of error, Mr. Naylor contends that the trial court erred in excluding Dr. Belloto's testimony.

**{¶37}** A trial court's ruling as to the admission or exclusion of expert testimony is within its broad discretion and will not be disturbed absent an abuse of discretion. *Pearlstein v. Pearlstein*, 11th Dist. Geauga No. 2008-G-2837, 2009-Ohio-2191, ¶ 96. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* (8 Ed.Rev.2004).

### *Actual Impairment*

**{¶38}** Mr. Naylor first argues that Dr. Belloto's proposed testimony that the marijuana metabolite level in his urine would not have impaired his driving ability was relevant to whether his violation of R.C. 4511.19(A) was a proximate result of Ms. Shaw's death and Ms. Darby's serious physical harm. We disagree. As explained below, Mr. Naylor's argument is based on an incorrect reading of the applicable law.

**{¶39}** "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence

9

which is not relevant is not admissible." Evid.R. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

{¶40} In count 1, Mr. Naylor was charged with aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a), which provides in relevant part, "[1] No person, while operating * * * a motor vehicle, * * * [2] shall cause the death of another * * * [3] [a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code * * *."

{¶41} In count 3, Mr. Naylor was charged with aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), which provides in relevant part, "[1] No person, while operating * * * a motor vehicle, * * * [2] shall cause serious physical harm to another * * * [3] [a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code * * *."

{¶42} Counts 1 and 3 were predicated on Mr. Naylor's violation of R.C. 4511.19(A)(1)(j)(viii)(II), which provides in relevant part, "[1] No person shall operate any vehicle * * * within this state, [2] if, at the time of the operation, * * * [3] [t]he person has a concentration of marihuana metabolite in the person's urine of at least thirty-five nanograms of marihuana metabolite per milliliter of the person's urine * * *."

{¶43} Although Mr. Naylor's argument references "impaired" driving, R.C. 4511.19 outlines offenses for driving "under the influence." For instance, R.C. 4511.19(A)(1)(a) prohibits driving "under the influence of alcohol, a drug of abuse, or a combination of them." The statute does not define the phrase "under the influence"; however, the

10

Supreme Court has Ohio cited with approval the following definition in the context of alcohol:

**{¶44}** "Under the influence of alcohol covers not only all the well known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in the consumption of alcohol and which tends to deprive the one so using it of the clearness of intellect and control of himself which he would otherwise possess. No matter what state of intoxication a person may be in, if he drives a vehicle upon the public road, he becomes a menace to the public and subjects himself to the penalties of the statute." *State v. Hardy*, 28 Ohio St.2d 89, 90, 276 N.E.2d 247 (1971).

**{¶45}** Thus, driving "under the influence" encompasses the concept of "impaired" driving. For an offense under R.C. 4511.19(A)(1)(a), a defendant's *behavior* is a primary consideration. *State v. North*, 2020-Ohio-6846, 164 N.E.3d 1121, ¶ 27 (7th Dist.). In *State v. Evans*, 127 Ohio App.3d 56, 711 N.E.2d 761 (11th Dist.1998), this court listed numerous factors supporting a police officer's decision to proceed with field sobriety tests after an initial stop, *see id.* at 63, fn. 2, which are also relevant when analyzing evidence of actual impairment.

**{¶46}** By contrast, R.C. 4511.19(A)(1)(b) through (i) prohibit driving with certain concentrations of alcohol in one's blood, breath, or urine. Whoever violates a provision in subsections (A)(1)(b) through (i) "is guilty of operating a vehicle *under the influence* of alcohol, a drug of abuse, or a combination of them." (Emphasis added.) R.C. 4511.19(G)(1). The Supreme Court of Ohio has characterized these as "per se" offenses, explaining, "the General Assembly [has] defined the point at which an individual can no

11

longer drive without being a substantial danger to himself and others. * * * In determining whether the defendant committed the *per se* offense, the trier of fact is not required to find that the defendant operated a vehicle while under the influence of alcohol or drugs, but only that the defendant's chemical test reading was at the pr[o]scribed level and that the defendant operated a vehicle within the state." *Defiance v. Kretz*, 60 Ohio St.3d 1, 3, 573 N.E.2d 32 (1991). "The critical issue at trial is the *accuracy of the test*, *not the behavior of the accused*." (Emphasis added.) *Newark v. Lucas*, 40 Ohio St.3d 100, 103, 532 N.E.2d 130 (1988).

{¶47} Similarly, R.C. 4511.19(A)(1)(j) prohibits driving with a certain concentration of a controlled substance or metabolites of a controlled substance in one's urine or blood. It sets forth a three-part statutory scheme for offenses involving marijuana. First, R.C. 4511.19(A)(1)(j)(vii) prohibits driving with certain concentrations of marijuana in one's urine or blood. Second, R.C. 4511.19(A)(1)(j)(viii)(I) prohibits driving if a person is "under the influence of alcohol, a drug of abuse, or a combination of them" *plus* has a metabolite presence of at least 15 nanograms by urine or five nanograms by blood. Third, R.C. 4511.19(A)(1)(j)(viii)(II) prohibits driving with at least 35 nanograms of marijuana metabolite by urine or at least 50 nanograms by blood. Whoever violates a provision in subsection (A)(1)(j) "is guilty of operating a vehicle *while under the influence* of a listed controlled substance or a listed metabolite of a controlled substance." (Emphasis added.) R.C. 4511.19(G)(1).

{¶48} The First Appellate District has characterized R.C. 4511.19(A)(1)(j)(vii) and (viii)(II) as "per se" offenses because "the state need only show that the defendant operated a vehicle and the defendant's chemical test reading was at the proscribed level."

12

*State v. Whalen*, 2013-Ohio-1861, 991 N.E.2d 739, ¶ 8 (1st Dist.). Notably, R.C. 4511.19(A)(1)(j) "does not prohibit driving with *any* amount of marihuana metabolite in one's body but rather sets certain maximum limits that may not be exceeded." (Emphasis sic.) *Whalen* at ¶ 16, fn. 2. In effect, the legislature decided as a matter of policy that anyone driving with the listed levels "definitely would be impaired." *Id.* Stated differently, "the Ohio legislature has set limits that create a point at which the legal operation of a vehicle is precluded, regardless of individual impairment." *State v. Gordon*, 155 Ohio App.3d 357, 2003-Ohio-6160, 801 N.E.2d 493, ¶ 56 (8th Dist.) (S. Gallagher, J., concurring).

{¶49} Since Mr. Naylor was charged with violating R.C. 4511.19(A)(1)(j)(viii)(II), the state only had to prove he had a proscribed amount of marijuana metabolite in his system. *See Whalen* at ¶ 18. Therefore, Dr. Belloto's proposed testimony that Mr. Naylor was not impaired was irrelevant, and the trial court properly excluded it. S*ee id.*

{¶50} This conclusion is not changed by the fact that the statutes governing aggravated vehicular homicide/assault required the state to prove the additional element of proximate cause, i.e., that Mr. Naylor caused Ms. Shaw's death and serious physical harm to Ms. Darby "[a]s the proximate result of" violating R.C. 4511.19(A)(1)(j)(viii)(II). R.C. 2903.06(A)(1)(a) and 2903.08(A)(1)(a).

{¶51} "'It is well established that the definition of "cause" in criminal cases is identical to the definition of "proximate" cause in civil cases. * * * The general rule is that a defendant's conduct is the proximate cause of injury or death to another if the defendant's conduct (1) is a "substantial factor" in bringing about the harm and (2) there is no other rule of law relieving the defendant of liability.'" *State v. Filchock*, 166 Ohio

13

App.3d 611, 2006-Ohio-2242, 852 N.E.2d 759, ¶ 77 (11th Dist.), quoting *State v. Flanek*, 8th Dist. Cuyahoga No. 63308, 1993 WL 335601, *6 (Sept. 2, 1993). Further, "a defendant will not escape liability merely because factors other than his own acts contributed to the death, so long as those factors were not the sole cause." *State v. Lennox*, 11th Dist. Lake No. 2010-L-104, 2011-Ohio-5103, ¶ 23.

{¶52} There was no dispute that Mr. Naylor drove left of center and that his and Ms. Darby's vehicles crashed head-on. The state's obligation to prove proximate cause did *not* require it to prove Mr. Naylor was actually impaired. Rather, the state was required to prove Mr. Naylor's per se violation of R.C. 4511.19(A)(1)(j)(viii)(II) was a substantial factor in bringing about Ms. Shaw's death and Ms. Darby's injuries as opposed to another factor being the sole cause. For instance, the defense pointed to other potential contributing factors to the crash or the victims' injuries, such as the alleged malfunction of Mr. Naylor's power steering pump, Ms. Darby's swerving into the opposite lane instead of to the side of the road, the victims not wearing seat belts, and Ms. Darby not having a valid driver's license.

{¶53} Under Mr. Naylor's contrary reading of the law, any provision in R.C. 4511.19(A) that requires only a proscribed concentration and not actual impairment could *never* be the predicate offense of aggravated vehicular homicide/assault. That outcome conflicts with the express language of the statutes that *any* offense within R.C. 4511.19(A) may be the predicate offense.

{¶54} Our conclusion is also not changed by the Sixth Appellate District's decision in *State v. Moore*, 6th Dist. Wood No. WD-18-030, 2019-Ohio-3705, which Mr. Naylor cites in support of his argument. In that case, the appellant was convicted of, inter alia,

14

Case Nos. 2023-P-0015, 2023-P-0021

aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a). The predicate offense was R.C. 4511.19(A)(1)(j)(ii), which prohibits driving with certain concentrations of cocaine in one's urine or blood. *Id.* at ¶ 21-22. The appellant argued that the state presented insufficient evidence that her violation of R.C. 4511.19(A)(1)(j)(ii) was the direct cause of the victim's death. *Id.* at ¶ 17. The Sixth District agreed, stating as follows:

**{¶55}** "The state furnished no evidence regarding the potential effects that a prohibited concentration of cocaine in a person's blood would have on a person, or on a person's ability to operate a vehicle. Without such evidence, the state failed to prove that as the proximate result of appellant driving with a prohibited concentration of cocaine in her blood, appellant caused [the victim's] death. As such, there was insufficient evidence to prove each element of the crime of aggravated vehicular homicide." *Id.* at ¶ 27.

**{¶56}** In addition to being nonbinding, *Moore* is unpersuasive. The *Moore* court relied primarily on this court's decision in *Filchock*, 166 Ohio App.3d 611, 2006-Ohio-2242, 852 N.E.2d 759, where we cited evidence indicating the defendant was actually impaired in determining whether the state presented sufficient evidence to prove proximate cause. *See Moore* at ¶ 26, citing *Filchock* at ¶ 80-81. However, *Filchock* did not involve a per se predicate offense; rather, we quoted former R.C. 4511.19(A)(1), which prohibited driving "under the influence of alcohol." *Filchock* at ¶ 74. Thus, in *Filchock*, unlike in this case, the state was required to prove actual impairment to prove the predicate offense.

**{¶57}** Finally, we reject Mr. Naylor's contention that our reading renders R.C. 4511.19(A)(1)(j)(ii) unconstitutional. According to Mr. Naylor, a statute is unconstitutional if it creates "an irrebuttable presumption of *impairment*." (Emphasis added.) The

15

authorities he cites in support, however, do not state this proposition. The appellants in *State v. Tanner*, 15 Ohio St.3d 1, 472 N.E.2d 689 (1984), and *State v. Woerner*, 16 Ohio App.3d 59, 474 N.E.2d 354 (10th Dist.1984), argued that former R.C. 4511.19(A)(2) and (3), which prohibited driving with certain concentrations of alcohol in one's breath or blood, were unconstitutional because they created a "conclusive presumption of *guilt*." (Emphasis added.) *Tanner* at 6; *Woerner* at 61. Further, the courts rejected that assertion because "[t]he breath-alcohol content is simply an element of the offense which the state must prove beyond a reasonable doubt by proper evidence," *Woerner* at 61, and because "[t]he defendant may still challenge the accuracy of his specific test results." *Tanner* at 6.

### Test Results

{¶58} Mr. Naylor next argues that Dr. Belloto's proposed testimony that the state did not conduct "a true mass spectrometry confirmation" was a permissible challenge to the reliability of his test results. Again, we disagree.

{¶59} In *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984), the Supreme Court of Ohio addressed "whether an accused may use expert testimony to attack the general reliability of intoxilyzers as valid, reliable breath testing machines in view of the fact that the General Assembly has legislatively provided for the admission of such tests in R.C. 4511.19 if analyzed in accordance with methods approved by the Director of Health." *Id.* at 186. The court held that "an accused may not make a general attack upon the reliability and validity of the breath testing instrument," since the General Assembly "legislatively resolved the questions of the reliability and relevancy of intoxilyzer tests." *Id.* at 188. However, "[d]efense expert testimony as to testing procedures at trial going to

16

Case Nos. 2023-P-0015, 2023-P-0021

weight rather than admissibility is allowed." *Id.* at 189. As stated, "[t]he defendant may still challenge the accuracy of his specific test results * * *." *Tanner* at 6.

**{¶60}** R.C. 3701.143 authorizes the Director of Health to determine techniques or methods for analyzing a person's urine to ascertain the amount of metabolite of a controlled substance. At the time Mr. Naylor's urine was tested, Ohio Adm.Code 3701-53-03(B)(3) and (4) provided that "gas chromatography" and "mass spectroscopy" were approved techniques for the analysis of metabolites of a controlled substance. In his report, Dr. Belloto wrote that the state's methodology, "though widely used in forensics, * * * is not a true mass spectrometry confirmation." Thus, contrary to Mr. Naylor's assertions, Dr. Belloto's proposed testimony challenged the reliability of the state's testing method, not Mr. Naylor's specific test results.

**{¶61}** In sum, the trial court acted within its discretion in excluding Dr. Belloto's proposed testimony.

**{¶62}** Mr. Naylor's first assignment of error is without merit.

### Prosecutorial Misconduct

**{¶63}** In his second assignment of error, Mr. Naylor contends that plain error occurred when the prosecutor misrepresented the law during his closing argument.

**{¶64}** "In general terms, the conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial." *State v. Maurer*, 15 Ohio St.3d 239, 266, 473 N.E.2d 768 (1984). "The prosecution is normally entitled to a certain degree of latitude in its concluding remarks." *State v. Smith*, 14 Ohio St.3d 13, 470 N.E.2d 883 (1984). "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially

17

affected substantial rights of the defendant." *Id.* at 14. "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Smith*, 87 Ohio St.3d 424, 442, 721 N.E.2d 93 (2000), quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶65} Mr. Naylor did not object to the prosecutor's statement at trial; therefore, he has forfeited all but plain error. *See id.*; Crim.R. 52(B). "Plain error exists when it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Issa*, 93 Ohio St.3d 49, 56, 752 N.E.2d 904 (2001).

{¶66} Mr. Naylor contends that the prosecutor told the jury six separate times in his closing argument that Mr. Naylor was "per se impaired," which, he contends, is an inaccurate statement of the law. A review of the transcript confirms the prosecutor did use this phrase multiple times. As explained above, however, "per se" is an accurate characterization of an offense under R.C. 4511.19(A)(1)(j)(viii)(II), and the Supreme Court of Ohio has used it to describe analogous offenses.

{¶67} Accordingly, Mr. Naylor has not assigned plain error, and his second assignment of error is without merit.

### Sufficiency of the Evidence

{¶68} In his third assignment of error, Mr. Naylor contends his convictions for aggravated vehicular homicide/assault were not supported by sufficient evidence.

{¶69} "'"Sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th

18

Ed.1990). "In essence, sufficiency is a test of adequacy." *Id.* "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶70} Mr. Naylor contends the state did not present sufficient evidence on counts 1 and 3 because it failed to prove his marijuana metabolite level had any impact on his ability to drive safely. For the reasons set forth above in our disposition of Mr. Naylor's first assignment error, the state was not required to do so.

{¶71} Mr. Naylor next contends the state did not present sufficient evidence on counts 2 and 4 because the state's evidence showed, at most, that he was negligent rather than reckless. At sentencing, count 2 was merged into 1, and count 4 was merged into count 3. "When counts in an indictment are allied offenses and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless." *State v. Mugrage*, 11th Dist. Portage No. 2020-P-0066, 2021-Ohio-4136, ¶ 133. Since there is no basis to conclude that counts 1 and 3 were not supported by sufficient evidence, any error regarding counts 2 and 4 would be harmless.

Case Nos. 2023-P-0015, 2023-P-0021

**{¶72}** Accordingly, Mr. Naylor's convictions for aggravated vehicular homicide/assault were supported by sufficient evidence.

**{¶73}** Mr. Naylor's third assignment of error is without merit.

## Constitutional Challenges

**{¶74}** In his fourth and final assignment of error, Mr. Naylor contends R.C. 4511.19(A)(1)(j)(viii)(II) is unconstitutional.

**{¶75}** The constitutionality of a statute is a question of law that we review de novo. *Cleveland v. State*, 157 Ohio St. 3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 15. Ohio courts must give legislative enactments a presumption of validity. *Tanner*, 15 Ohio St.3d at 2, 472 N.E.2d 689. Before declaring an enactment of the legislature to be unconstitutional, "it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus.

**{¶76}** In determining the constitutionality of a legislative act, we first determine whether the party is challenging the act on its face or as applied to a particular set of facts. *Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 14. An as-applied challenge asserts that a statute is unconstitutional as applied to the challenger's particular conduct. *Kruppa v. Warren*, 11th Dist. Trumbull No. 2009-T-0017, 2009-Ohio-4927, ¶ 12. In contrast, a facial challenge asserts that the law is unconstitutional as applied to the hypothetical conduct of any person, without reference to the defendant's specific conduct and circumstances. *Id.* Facial challenges are the most difficult to mount successfully since the challenger must establish that "no set of

20

circumstances exists under which the act would be valid." *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 21.

**{¶77}** Mr. Naylor does not state whether he is asserting a facial or an as-applied challenge. Since he does not discuss any particular facts regarding the law's application to himself, we review the constitutionality of the statute on its face.

### *Vagueness*

**{¶78}** Mr. Naylor first contends that R.C. 4511.19(A)(1)(j)(viii)(II) is void for vagueness. The vagueness doctrine, which is premised on the Due Process Clauses of the Fifth and Fourteenth Amendments, requires a statute to give fair notice of offending conduct. *Tanner* at 3. A criminal statute is void for vagueness if it fails to define an offense with sufficient definiteness that ordinary people can understand what conduct is prohibited, or if it encourages arbitrary and discriminatory enforcement. *Id.*

**{¶79}** Mr. Naylor argues that R.C. 4511.19(A)(1)(j)(viii)(II) fails to provide an ordinary person with notice of the prohibited conduct. The First District in *Whalen*, 2013-Ohio-1861, 991 N.E.2d 739, rejected this exact argument, reasoning as follows:

**{¶80}** "There is nothing vague, unclear, or indefinite about the statute * * *. It proscribes driving with explicitly defined levels of a marihuana metabolite. A metabolite is commonly defined as a 'substance produced by metabolism.' *American Heritage Dictionary* 1103 (4th Ed. 2000). A person of ordinary intelligence is certainly capable of understanding the meaning of a marihuana metabolite and that driving with the proscribed levels of such a metabolite in one's system is prohibited.

**{¶81}** "[Appellant] suggests, however, that the statute is vague because an ordinary person is not able to reasonably discern how long traces of marihuana, whether

ingested legally or not, may remain in one's system. Thus, he argues, a person who ingests marihuana does not know when he can legally drive an automobile. Marihuana, however, is a controlled substance. It is unlawful to use or possess marihuana in any amount in Ohio. * * * Certainly, one who has consumed marihuana is on fair notice that metabolites may remain in his system." *Id.* at ¶ 11-12. *Accord State v. Topolosky*, 10th Dist. Franklin No. 15AP-211, 2015-Ohio-4963, ¶ 25-28; *see also State v. Miller*, 6th Dist. Fulton No. F-10-009, 2010-Ohio-5175, ¶ 16-17.

**{¶82}** Mr. Naylor counters that the *Whalen* court's assumption is no longer valid because marijuana is now legal in Ohio. However, marijuana use was illegal in Ohio at the time Mr. Naylor committed his offenses, other than under an inapplicable medical exception. Marijuana was and continues to be illegal under federal law. *State v. Ryan*, 11th Dist. Lake No. 2021-L-032, 2021-Ohio-4059, ¶ 28; *see* 21 U.S.C. 841(a)(1) and 844.

**{¶83}** In addition, the Tenth District has aptly explained:

**{¶84}** "[T]he object of the statute is not the prohibition of marijuana use, which is addressed in other aspects of the criminal code. The statute implements a bar to impaired driving, regardless of the legality of the substance involved. This is reflected by the fact that the statute does not bar trace levels of metabolite, which would reflect any level of consumption of the illegal substance, but only prohibits metabolites at a level that the legislature deemed dangerous in a driver. The notice of prohibited conduct here is clearly that driving while impaired is not legal in Ohio, and this is not dependent on the present or future illegality of the impairing substance in Ohio * * *." *Topolosky* at ¶ 29.

**{¶85}** We agree with our sister districts and conclude R.C. 4511.19(A)(1)(j)(viii)(II) is not void for vagueness.

22

Case Nos. 2023-P-0015, 2023-P-0021

### *Substantive Due Process*

**{¶86}** Mr. Naylor next contends that R.C. 4511.19(A)(1)(j)(viii)(II) violates substantive due process because it is not rationally related to a legitimate governmental interest. According to Mr. Naylor, because marijuana metabolite cannot be correlated with impairment, a per se violation is arbitrary and bears no rational relationship to preventing impaired driving.

**{¶87}** The First District in *Whalen* also rejected this argument, explaining as follows:

**{¶88}** "[Appellant's] real quibble seems to be with the legislative decision to criminalize driving based upon the presence of a marihuana metabolite that may not itself cause impairment. Certainly, however, the presence of a marihuana metabolite in one's system indicates that one has used marihuana, an illegal drug in Ohio. Furthermore, THC, the active ingredient in marihuana, leaves the body relatively quickly. Unlike the case with alcohol breathalyzer tests, which are commonly administered by police during roadside stops, it may take some time before police are able to transport and administer a blood or urine test to a suspected drugged driver. Accordingly, the legislative decision to include marihuana metabolites within the per se prohibition is not unreasonable.

**{¶89}** "The Ohio Supreme Court has recognized that driving is a privilege, not a constitutional right, and that the state has a legitimate interest in highway safety and keeping impaired drivers off the road. The General Assembly acted well within its police powers in criminalizing driving with a prohibited amount of marihuana or marihuana metabolite in a person's blood or urine." (Footnote and citations omitted.) *Id.* at ¶ 16-17. *Accord State v. Schultz*, 2015-Ohio-2252, 34 N.E.3d 176, ¶ 14-17 (9th Dist.); *Topolosky*,

23

10th Dist. Franklin No. 15AP-211, 2015-Ohio-4963, at ¶ 30-34; *State v. Ossege*, 2014-Ohio-3186, 17 N.E.3d 30, ¶ 31-33 (12th Dist.); *State v. Doane*, 2020-Ohio-900, 152 N.E.3d 956, ¶ 23-24 (5th Dist.).

{¶90} We agree with the *Whalen* court and conclude R.C. 4511.19(A)(1)(j)(viii)(II) does not violate substantive due process.

{¶91} Accordingly, R.C. 4511.19(A)(1)(j)(viii)(II) is constitutional, and Mr. Naylor's fourth assignment of error is without merit.

**Nunc Pro Tunc Entry**

{¶92} Although not raised by the parties, the trial court's sentencing entry contains clerical mistakes that should be corrected with a nunc pro tunc entry.

{¶93} Pursuant to Crim.R. 36, "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." "[C]ourts possess inherent authority to correct clerical errors in judgment entries so that the record speaks the truth." *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19. "[N]unc pro tunc entries 'are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided.'" *State ex rel. Mayer v. Henson*, 97 Ohio St.3d 276, 2002-Ohio-6323, 779 N.E.2d 223, ¶ 14, quoting *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164, 656 N.E.2d 1288 (1995).

{¶94} In a journal entry, the trial court memorialized that it found Mr. Naylor guilty on count 7 (driving left of the center line). However, the sentencing entry incorrectly states that the *jury* found Mr. Naylor guilty on count 7. In a separate journal entry, the trial court memorialized Mr. Naylor's guilty pleas to counts 8 and 9 (OVIs). At the sentencing

24

hearing, the trial court noted Mr. Naylor's prior guilty pleas and imposed sentences on those counts, i.e., one-year license suspensions and a $370 fine. However, the sentencing entry does not memorialize Mr. Naylor's guilty pleas or sentences on counts 8 and 9.

**{¶95}** Crim.R. 32(C) provides that "[a] judgment of conviction shall set forth the fact of conviction and the sentence." The Supreme Court of Ohio has "consistently regarded Crim.R. 32(C) errors as clerical mistakes subject to nunc pro tunc correction." *Snead v. Ferenc*, 138 Ohio St.3d 136, 2014-Ohio-43, 4 N.E.3d 1013, ¶ 10.

**{¶96}** Accordingly, this matter is remanded to the trial court to issue a nunc pro tunc sentencing entry that states (1) the court found Mr. Naylor guilty of count 7 (driving left of the center line) at trial; (2) the court found Mr. Naylor guilty of counts 8 and 9 (OVIs) following the court's acceptance of his guilty pleas; and (3) the court sentenced Mr. Naylor to one-year license suspensions and assessed a $370 fine on counts 8 and 9 (OVIs).

**{¶97}** For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed. This matter is remanded for the issuance of a nunc pro tunc sentencing entry.

EUGENE A. LUCCI, P.J., concurs,

JOHN J. EKLUND, J., concurs in judgment only.

25